## STINSON v. MURRAY.

No. A–556.

Third Division.

Feb. 11, 1930.

W. H. Rager, of Anchorage, for plaintiff.
L. V. Ray, of Seward, for defendant.

HILL, District Judge.

In September, 1926, Albert Stinson, as plaintiff brought this suit against James Murray, as defendant, praying that plaintiff be adjudged the owner of the full, regular, and natural flow of waters of Nugget creek; that his title thereto be quieted; that the defendant be perpetually enjoined from in any wise interfering with the plaintiff's use of said water and be prohibited from diverting any of said water except the excess over 700 miner's inches.

In plaintiff's complaint he alleges that he and his grantors and predecessors in interest have been since the year

1910 the owners and continuously in the possession of certain placer mining claims situated on Nugget creek, and described as Nos. 1, 2, and 3 above Discovery and No. 3 South Bench claim; that said Nugget creek was at all of the times mentioned in the complaint a natural nonnavigable water course with distinct beds and banks, having its source above said mining claims of plaintiff and flowing through and over said mining claims; that in the year 1910 plaintiff's grantors and predecessors in interest diverted, appropriated, and used for mining purposes on said placer mining claims all of the waters of said Nugget creek, and ever since said year 1910 plaintiff's grantors and predecessors in interest and plaintiff used and employed said waters until about the 1st day of June, 1926, when, he alleges, the defendant diverted the waters of said Nugget creek and conveyed the same around the said mining claims of said plaintiff and wrongfully dispossessed and deprived plaintiff of said waters; that the full flow of said Nugget creek is 700 inches; and that it is all necessary for the use of plaintiff upon his said claims.

As to the physical conditions existing at the commencement of this action, it is uncontested that Nugget creek was a gold-producing nonnavigable stream upon which mining has been carried on since some time prior to 1909, situated in the Third division of the territory of Alaska. Its whole length from above its forks to the mouth is covered by mining claims which are known by numbers running consecutively from Discovery claim each way. Those downstream have after the number the word "below," and those upstream the word "above." Commencing on the lower end of 1 above and extending to 3 below, the creek runs through a box canyon. Plaintiff's No. 3 South Bench adjoins No. 3 above and does not include any of the natural flow of the creek.

The Old Company ditch sometimes called Herrendon & Jacobs ditch has its intake on No. 9 above and runs along the south side of Nugget creek. The Price or Price &

Martin ditch has its intake on No. 10 above and runs along the northern side of Nugget creek. Both ditches extend below the canyon, and the waters carried by them are there used by defendant in hydraulic mining.

To support plaintiff's title, he offered: First, a certificate of relocation of Nugget Gulch claims, "formerly known as 1 and 2 above Discovery," as 1–2 Association claim, made April 18, 1913, by Hugh Price and Carl E. Martin, the builders of the Price Ditch; second, a certified copy of a deed dated November 12, 1913, from Hugh Price and C. E. Martin conveying to F. R. Smith, Robert Hughett and Arthur Dahlstrom, the said 1–2 Association; third, a certified copy of a location notice by M. F. Frye of claim known as No. 3 above Discovery on Nugget creek, dated July 28, 1908; fourth, a certified copy of a location notice of No. 3 South Bench claim by Robert Hughett, dated October 16, 1910; fifth, a paper writing, unacknowledged, dated the 6th day of March, 1917, made by Robert Hughett, Fred R. Smith, and Arthur Dahlstrom, purporting to convey to plaintiff "all right, title and interest in and to the 1–2 Association and No. 3 above Discovery and the No. 3 South Bench claim on Nugget creek, said claims being placer mining claims"; sixth, evidence of several persons as to use of Nugget Creek water from 1910 to the commencement of this action.

It will be noted that no conveyance is shown divesting M. F. Frye of the title to location No. 3 above, and, although defendant denied plaintiff's allegation of ownership and possession of said claims, no proof has been offered except certified copies of location notices to show valid appropriation of the mining claims to which plaintiff claims title. However, the case was apparently tried by both plaintiff and defendant upon the theory that plaintiff has been since 1917 the owner of those placer mining claims, and I shall decide this case upon that theory.

At the conclusion of taking oral testimony in this action, the case was continued in order that defendant might obtain

and offer two written exhibits, and it was agreed that the parties should present to the court briefs as to the law. Before any brief was presented on behalf of plaintiff, plaintiff's attorney, W. H. Rager, died, and the court suggested to the plaintiff that he make arrangement with some attorney to represent him. The plaintiff replied that he was unable to do that, and requested that the matter proceed to determination. Thereafter, at the court's request, L. D. Roach of the bar of this court, who had access to Mr. Rager's files, made a search among them for authorities pertaining to this case and handed to the court a long list of authorities found in Mr. Rager's Stinson files. These citations were not grouped under headings, and, after reading all of them, it is not apparent just how they were intended to apply.

In his complaint plaintiff alleges that his predecessors in interest did actually appropriate and use for mining purposes the waters of Nugget creek prior to the construction of said ditches, and plaintiff is therefore entitled to use said waters.

He may also claim: First, that, because he was the owner of claims embracing both banks of Nugget creek, the law gives him the right to use all of the waters of Nugget creek in mining operations; second, that, since his predecessors in interest, Price and Herrendon, had appropriated the waters of Nugget creek flowing in the Price ditch, that appropriation was appurtenant to claims 1–2 Association, and, as an appurtenant, the law gave plaintiff the right to use the water so appropriated.

I know of no other position he can take under the proof, and no other position was suggested in the presentation of the case.

The rights of the parties in this action accrued before chapter 57 of the 1917 Session Laws of Alaska was enacted, and therefore are not governed by that act. Before that act, the doctrine of prior appropriation of water applied in Alaska. This was held I believe without exception

in all District Courts in Alaska and by the Circuit Court of Appeals for the Ninth Circuit in Van Dyke v. Midnight Sun Mining & Ditch Co., 177 F. 85. Therefore plaintiff cannot claim the water of Nugget creek merely because his claims embrace its banks.

His two remaining positions are intimately connected, and I will now consider the proof as to appropriation.

The testimony shows that Price and Martin commenced to build the Price & Martin ditch in 1911, and pushed it to completion with reasonable diligence. In 1913 it was completed to the lower end of the canyon, and the waters carried by it were there used in mining.

The proof as to the commencement of the Herrendon & Jacobs ditch shows that it was commenced in 1909 and pushed to completion with reasonable diligence. The evidence leaves me in doubt as to when water was first turned through it. But there is no doubt that in 1913 it was completed to below the canyon, and the water carried through it was then used for mining purposes.

The right to the water carried in these ditches dated from the commencement of work upon them and not from their completion. Miocene Ditch Co. v. Jacobsen (C. C.A.) 146 F. 680.

Neither plaintiff nor his predecessors in interest have shown any use of water by them on 1–2 Association prior to the completion of both ditches. Mr. Martin, one of the locators through whom plaintiff deraigns his title, testified that neither he nor Mr. Price did any work on 1–2 Association before they sold it; and they did not locate it until both ditches were completed.

As to No. 3 above Discovery, no connection by deed is shown between M. F. Frye and plaintiff. Mr. Fred R. Smith, a witness for plaintiff and one of the men who in 1917 made the deed to plaintiff covering No. 3 above Discovery, said in his testimony that he bought No. 3 above Discovery from Frye in the spring of 1910 and worked on

Nugget creek from 1910 to 1915. He details the work he did and his use of water. He was associated with Robert Hughett, and they employed one man. They took their water from about one-third of the way up on No. 4 above and built a low dam about two or three feet high. In 1911 they used the same water for the first half of the season, and in the second half of the season they worked on the lower end of the claim and took water from a tributary on the left limit; that is, the north side of Nugget creek. In 1912 they worked the lower part of No. 3 above and did not use any water from the south side of the creek. No use of water is shown prior to that of Mr. Smith.

During the construction and for four years after the completion of the Old Company ditch and the Price ditch, according to Smith's own testimony, he was the owner of No. 3 above Discovery mining it, and it does not appear that he ever made any objection to the appropriation of water through either ditch.

The document by which he and others attempted to convey to plaintiff contains the following clause: "This indenture is made without change as relates to the rights and titles between Hugh Price, C. E. Martin and F. R. Smith, Robert Hughett, Arthur Dahlstrom."

It appears evident that in some way Price and Martin were interested in this property, and I cannot escape the conclusion that there was either some arrangement between Smith and his partners and Price and Martin that Price and Martin should use the water running through the Price ditch or, if there was no such arrangement, the conclusion that Smith and his partners abandoned any right they may have had to that water. As to the Old Company ditch, the appropriation of water for it was made before the location of No. 3 South Bench claim. No evidence is offered as to the use of water on No. 3 South Bench claim before the completion of the Price ditch.

174

This brings me to a consideration of the third position which may be taken by the plaintiff; that is, that he acquired the water as appurtenant to the land.

■ Wiel, in his first volume of his Water Rights in the Western States (3d Ed.) p. 591, lays down the following as the law: "Summing up it may be said that a water-right of appropriation will not pass on a sale of land if not so intended and it is, hence, not strictly accurate to say that a deed of land per se passes a water-right used for its irrigation, but, in the absence of any evidence of such intent to the contrary, it is well settled that an appurtenant water-right of appropriation passes with the land on a sale though not mentioned in the deed."

■■ It appears that, as to the Price ditch, Price was, at some time before the title thereto vested in plaintiff, the owner of claims 1 and 2 above Discovery, and that long before he signed any deed to that ground he had built the Price ditch to a point far below that ground and had never used any of the water in the Price ditch for any of the plaintiff's ground. Therefore the ditch and the water carried by it never were appurtenant to Nos. 1 and 2 above. Certainly it was perfectly apparent in 1917 that Price and Martin never intended to pass the ditch and the water rights appertaining thereto to their grantees as an appurtenant to 1–2 Association.

I hold, therefore, that the plaintiff cannot successfully claim that the water right passed to him by the Price and Martin deed as an appurtenant to the land claimed by him.

The plaintiff testified that he first went on Nugget creek in 1906, and that he was there at various intervals after that prior to his purchase in 1917 of the ground he now claims. It is certain that, when he bought that ground, he knew that both ditches had been in operation for a considerable number of years. He paid $300 for his ground; and the right to take the water from those ditches was worth many times that amount. It is perfectly evident that,

when plaintiff bought that ground, he had no idea that he was buying the water in those ditches. He never made any complaint so far as the testimony shows except in 1918, and in both 1918 and 1919 the defendant was openly taking the water adversely to the plaintiff. In 1919 the plaintiff, with Theodore Gogoff and Nick Balabanoff and two or three others, were engaged together in mining on No. 3 above. At that time, in order to get water from the Company ditch, Nick Balabanoff, one of the mining partners on No. 3 above, applied to the defendant for the use of the water, and was given the use thereof provided he signed a document, which appears in evidence and is entitled, "Receipt for Nugget Creek ditch water on right limit of said creek," and part of the consideration for that receipt is recited in it as follows:

"I, J. C. Murray, will put in the headgate in my ditch to deliver the water to Nick Balabanoff and partners at no time will they claim any part of this water after this year.
"[Signed]   Nick Balabanoff & Co."

It is true that Balabanoff testified that Stinson, the plaintiff, was not a member of his company, but only entitled to work with them. However, it appears without contradiction that Stinson knew of this agreement and accepted the benefits thereof; and to some extent at least it appears to be in evidence that he was not claiming the Company ditch water adversely to Murray, the defendant herein.

The evidence shows that in April, 1919, Hugh Price, Mrs. Hattie Price, and Carl E. Martin deeded to the defendant the Price & Martin ditch and their right to use the water flowing therein, and that on April 18, 1921, defendant bought the Old Company ditch.

The burden of proving the allegations of his complaint is upon the plaintiff. He has not sustained that burden, and in my opinion has failed to show any right whatever to such water as, for approximately thirteen years prior to the commencement of this action and for approximately four years before plaintiff had any interest whatever in

Nugget creek or the lands through which it flows, has been running through the two ditches now owned by defendant.

Findings and decree in accordance with this opinion may be drawn and submitted.